■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID DEGONDEA, Appellant. [705 NYS2d 20] —Judgment, Supreme Court, New York County (James Leff, J.), rendered January 9, 1995, convicting defendant, after a jury trial, of murder in the first degree, attempted murder in the first degree, criminal possession of a weapon in the second degree, and criminal sale of marihuana in the first degree, and sentencing him to consecutive terms of 25 years to life on the murder and attempted murder convictions and 5 to 15 years on the marihuana sale conviction, and a concurrent term of 5 to 15 years on the possession of a weapon conviction, unanimously affirmed.

Defendant was found guilty of the murder of a police officer during a shootout on the Lower East Side on March 10, 1993. The shooting resulted from the botched sale of 4 pounds of marihuana to an undercover officer. During his trial testimony, the defendant admitted firing at the officer, but claimed that his actions were justified because he thought the deceased and the other officers were Colombian drug dealers who were attempting to rob him. The jury rejected defendant's account, convicting him of murder, attempted murder, possession of a weapon and illegal sale of marihuana.

At trial, the voir dire questioning was not stenographically recorded, but the portion of the voir dire proceedings that included the parties' challenges and the court's rulings was transcribed. When this appeal was originally before us (*People v Degondea*, 256 AD2d 39), defendant urged a reversal based, *inter alia*, upon two jurors' statements that they could not be fair due to friendships with police officers, and we remitted the case to the Supreme Court for a reconstruction hearing "to determine the substance of * * * two jurors' statements during the voir dire proceedings that relate to whether either juror possessed any genuine bias that would preclude such juror from rendering an impartial verdict" (*supra,* at 41-42). After the hearing, defendant conceded that one of the two jurors was properly chosen because he had affirmed that he could be fair. This appeal concerns the other juror.

The reconstruction court construed our prior order as finding that defendant had "raised an appealable issue * * * concerning whether the jurors' statements entitled [the defendant] to cause excusals", and it concluded that the People had the burden of proving by a preponderance of the evidence both that

reconstruction was possible, and that each juror had made statements which unequivocally expressed an ability to render an impartial verdict. However, our prior order specifically stated that "the contradictory statements by the court, defense counsel and the prosecutor make it clear that the existing record establishes nothing definitively" (*People v Degondea, supra,* at 41). Thus, while the reconstruction court correctly concluded that the proponent of an off-the-record statement generally has the burden of proving that the statement was made (*see, Jones v Vacco,* 126 F3d 408, 416), here it was defendant's burden to establish by a preponderance of the evidence that a juror expressed a bias which would have precluded him from rendering an impartial verdict (CPL 270.20 [1] [b]; *see, People v Fernandez,* 81 NY2d 1023, 1024). Independent review of the transcript of the reconstruction hearing reveals that defendant did not meet this burden.

The basis for the defense challenge to the juror at issue was the juror's statements about a close friendship with a New York City police captain assigned to a narcotics squad. The juror testified at the reconstruction hearing that he would presently feel uncomfortable sitting on a jury in a case in which a police officer was involved, but he did not recall if he had expressed this concern four years earlier, at the time of the voir dire. The Court of Appeals has instructed that a friendship with a police officer does not require per se disqualification of a prospective juror (*People v Colon,* 71 NY2d 410, *cert denied* 487 US 1239); a for cause challenge should be granted only where there is additional evidence that the juror could not be impartial (*supra*).

Assistant District Attorney (ADA) Greenbaum, the lead prosecutor, testified at the reconstruction hearing that his regular jury selection practice involved specific inquiry of every juror whether he/she could be fair and impartial, and defense counsel confirmed that he thought the juror at issue was asked this question. Defense counsel testified, "I remember from the tone and tenor of what [the juror] said, that [his friendship with the officer] would affect him in being able to sit fairly in this case". Co-defendant's counsel also made a notation during the original voir dire indicating that this juror would favor the prosecution, and he and defendant both testified at the reconstruction hearing that the juror had stated he could not be fair.

However, the juror, who had no interest in the proceedings, testified at the reconstruction hearing that he was "pretty sure" that he was asked if he could be a fair and impartial juror, and

"probably" said he could be. ADA Flemming's notes[1] and ADA Greenbaum's notation on the jury selection sheet[2] support a conclusion that this juror may have initially indicated that he would be uncomfortable sitting on the jury due to his relationship with one or more police officers, but that he then retreated from this position, indicating that his friendships would not affect his ability to be fair and impartial.

Thus, while the record supports the reconstruction court's conclusion that the juror may have initially expressed discomfort sitting on a case involving a police officer, the totality of the reconstruction record does not reveal that the court violated CPL 270.20 (1) (b) as a matter of law by refusing defense counsel's challenge for cause (*People v Smith*, 232 AD2d 209, *lv denied* 89 NY2d 946 [challenge for cause properly denied where "potential juror's assurances of impartiality were cautiously phrased, [but] she never gave any indication of actual bias"]).

None of the other points raised by defendant in the original appeal provides an independent basis for reversal. Defendant urged that the trial court committed reversible error in refusing to instruct the jury on that portion of the justification defense authorizing the use of deadly physical force in defense of a third person (Penal Law § 35.15 [1], [2] [a]), arguing that a reasonable view of the evidence existed that defendant shot his weapon in defense of his accomplices. Under the facts of this case, however, we conclude that the court's refusal to charge justification in defense of a third person was harmless error (*see, People v Albino*, 65 NY2d 843). By its verdict convicting defendant of murder and the attempted murder of two police officers, the jury necessarily found that defendant knew or should have known that the intended victims were police officers engaged in their official duties at the time of the shooting (*see,* Penal Law § 125.27 [1] [a] [i]), since such knowledge is an element of those crimes. Moreover, pursuant to the court's instructions on Penal Law § 35.27, the "no-sock" law, the jury was told that defendant was not entitled to use *any* physical force to resist an arrest by a police officer who reasonably appeared to be the same, and thus, was not entitled to claim justification at all under such circumstances.[3] Thus, as the jury made findings which precluded the defense of justification, the

---

1. ADA Flemming's notes initially indicated "cause", but also indicated that the juror was "making a comeback", and was "ok".

2. The word "couldn't" was written under the juror's name on the sheet, but it was crossed out.

3. Although defendant is correct that the "no-sock" provision in Penal Law § 35.27 does not preclude a defendant from claiming justification to

court's refusal to charge the "defense of a third person" prong of the justification defense did not prejudice him (*People v Albino, supra*).

Defendant also argued that he was denied the fundamental right to present witnesses in his own defense (*see, Chambers v Mississippi*, 410 US 284, 302) when the court denied his request for a one-day adjournment to secure the presence of his expert pathologist, who would have provided testimony contradictory to that of the medical examiner concerning the undercover's positioning during the shooting. This argument should be rejected because the defense did not make the required showing of diligence in securing the attendance of the witness (*see, People v McQuilkin*, 213 AD2d 680, *lv denied* 85 NY2d 977; *People v Rodriguez*, 188 AD2d 494, *lv denied* 81 NY2d 892). There is no evidence that the witness had been subpoenaed, or had previously been present in court. Further, the record is silent as to any discussion between counsel and the potential witness as to the timing of his testimony, or any possible scheduling conflicts. Accordingly, there is no basis for us to conclude that defense counsel acted diligently in bringing this allegedly "crucial" witness to court (*see, People v Charlton*, 239 AD2d 104, *lv denied* 90 NY2d 903; *People v Ward*, 237 AD2d 637, *lv denied* 89 NY2d 1102; *People v Velazquez*, 211 AD2d 471, *lv denied* 85 NY2d 915; *People v Blasini*, 253 AD2d 886, *lv denied* 92 NY2d 1028). Concur—Sullivan, J. P., Nardelli, Mazzarelli, Andrias and Saxe, JJ.

---

resist an unprovoked police attack or excessive police force (*see, People v Alston*, 104 AD2d 653), this clearly was not defendant's theory in this case.