[895 NYS2d 58]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDDY
RODRIGUEZ, Appellant.

First Department, February 16, 2010

## APPEARANCES OF COUNSEL

*Yalkut & Israel*, Bronx (*Arlen S. Yalkut* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Stanley R. Kaplan* and *Joseph N. Ferdenzi* of counsel), for respondent.

## OPINION OF THE COURT

TOM, J.P.

The prosecution's theory of this case is that defendant entered a delivery truck, without authorization and while intoxicated, and caused it to strike vehicles and pedestrians in the intersection below. Defendant, however, alleges that he entered the vehicle only after it was already in motion, rolling downhill and, without starting the engine, unsuccessfully attempted to stop it. No witness actually saw defendant enter the vehicle, which was poorly maintained and grossly overloaded. Since there is a reasonable view of the evidence that defendant unlawfully entered and operated the vehicle while intoxicated in an attempt to avoid injury while confronting a situation not of his making, he was entitled to a justification charge, and Supreme Court's unexplained omission to so instruct the jury constitutes reversible error.

It is uncontroverted that on the afternoon of August 1, 2005, a box truck being used to make deliveries was parked at the right-hand curb, facing downhill on Mt. Eden Avenue in the Bronx, between the Grand Concourse and Walton Avenue. The driver, Francisco Rios, turned off the engine, left the keys in the ignition and went into a store. The vehicle was later observed proceeding downhill along Mt. Eden Avenue coming from the

direction of Walton Avenue and traveling westbound toward Townsend Avenue, where it went through the intersection, striking three persons. It was brought to a stop after colliding with oncoming cars approaching the intersection at Jerome Avenue. Defendant was then seen leaving the vehicle through the passenger door. Defendant did not have permission to operate the truck, nor did he possess the appropriate operator's license.

Carlos Montilla recognized the truck that he observed approaching Jerome Avenue as a vehicle that was parked every day on the hill at the corner of Mt. Eden and Walton Avenues. He also recognized defendant, whom he had known for about 10 years, as he emerged from the truck's passenger-side door. Montilla testified that defendant told him that he was "joking around" and "had taken the truck to play a trick on the owner." Montilla had also observed defendant drinking beer on the corner.

Following his arrest, defendant was subjected to blood alcohol and narcotics testing, which disclosed a blood alcohol level of .09%. The People's expert opined that at the approximate time of the accident, defendant's blood alcohol level would have been between .13% and .17%.

From Walton Avenue where the truck was parked, westbound to Townsend Avenue, Mt. Eden Avenue slopes down at a grade of 10%, which increases to 12% between Townsend and Jerome Avenues. Francisco Rios testified that it was his custom to leave the truck in reverse gear with the wheels either angled toward the curb or straight and the parking brake set. However, as the People concede, during his grand jury testimony, Rios stated that the truck's parking brake was not operational.

The People's interpretation of events is that "defendant, while intoxicated, got into Francisco Rios's truck to play a 'trick' and recklessly caused the truck to move down Mt. Eden Avenue, hitting and killing Saquan Williams, Jr. and seriously injuring Tasha Gibbs and Giselle Buie."

The justification defense contained in Penal Law § 35.05 provides, in pertinent part:

> "[C]onduct which would otherwise constitute an offense is justifiable and not criminal when: . . .
>
> "2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor,

and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue . . . Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense."

Supreme Court refused defendant's request to instruct the jury on justification, stating, "I do not see how a Justification Charge would be warranted under the particular facts and circumstances." The court did not elaborate on its reasoning.

On appeal, the People adopt the unusual argument asserted by the prosecutor at trial—that by intentionally entering a truck that was *already* endangering the public in an effort to prevent harm, defendant did not *create* a risk of injury. They theorize that Penal Law § 35.05 (2) contemplates a situation confronting the defendant with a "choice of evils," where the defendant has engaged in conduct that, because it is criminal, requires justification to avoid criminal liability, and the defendant attempts to demonstrate that he resorted to such criminal behavior to avoid a greater injury. Since defendant denied either being intoxicated or speaking with Montilla, the People contend that "when the defense evidence is viewed in the light most favorable to defendant, defendant did not act recklessly or operate a vehicle while intoxicated." Thus, they conclude, he was not engaged in any statutorily prohibited conduct that would require justification, and the defense is unavailable.

The People advance the untenable argument that a defendant must first present a case that warrants conviction for criminal conduct before the right to assert a defense of justification can be invoked. The extent to which a law requiring a defendant to incriminate himself before putting in a defense might infringe upon constitutional rights guaranteed to the accused need not be addressed because the position advocated by the People is simply not the law.* As stated in *People v Butts* (72 NY2d 746, 748 [1988]), "It is established New York case law that a defendant's entitlement to a charge on a claimed defense is not

---

* "No person . . . shall be compelled in any criminal case to be a witness against himself" (US Const Amend V).

defeated solely by reason of its inconsistency with some other defense raised or even with the defendant's outright denial that he was involved in the crime."

Nor is consideration of the availability of the justification defense confined to the evidence presented by the defendant, as the People propose. When deciding "whether a particular theory of defense should have been charged to the jury, the evidence must be viewed in the light most favorable to the defendant" (*People v Farnsworth*, 65 NY2d 734, 735 [1985]). The availability of the defense rests on the record as a whole, not merely the evidence produced by the defendant (*People v Steele*, 26 NY2d 526, 529 [1970] [alibi defense does not preclude possibility of justification raised by the People's case]).

*People v Huntley* (87 AD2d 488, 494 [1982], *affd* 59 NY2d 868 [1983]) is illustrative. There,

> "a defendant charged with murder and manslaughter had testified, quite in conflict with other witnesses, that the victim of the stabbing death had initiated their encounter by approaching defendant with a knife and demanding his money. When defendant attempted to flee, he was pursued, and in the ensuing scuffle, the knife inadvertently went into the victim's back. The defendant's claimed effort to thwart an attempted armed robbery was held sufficient to require presentation of the justification issue to the jury, even though the defendant never admitted that he had intended to stab the victim" (*People v Padgett*, 60 NY2d 142, 145 [1983], citing *Huntley*, 87 AD2d at 494).

In *Padgett*, the defendant requested that the jury be instructed on the justification defense with respect to the offense of criminal mischief arising out of his breaking a pane of glass in an emergency door. As here, the appeal involved a finding that no reasonable view of the evidence supported the requested instruction (*Padgett*, 60 NY2d at 144), and the People likewise attempted to "limit the availability of the justification defense to cases in which the conduct is admitted to have been intentional, but in avoidance of a greater injury" (*id.* at 146). Noting that "the People have tendered a much too narrow interpretation of the circumstances under which this doctrine may be applicable," the Court of Appeals observed that, "as in *Huntley*, an aspect of the defendant's testimony is inconsistent with the defense," concluding that "it appears well settled that this type of incon-

sistency should not deprive defendant of the requested charge" (*id.*). In short, the position advocated by the People has been rejected by the Court of Appeals on more than one occasion (*see e.g. People v Steele*, 26 NY2d 526 [1970], *supra*), as well as by this Court (*see People v Smith*, 62 AD3d 411, 412 [2009], *lv denied* 12 NY3d 929 [2009]; *People v Suarez*, 148 AD2d 367, 368-369 [1989]), and must be rejected here.

There was ample evidence presented at trial to warrant a justification charge. According to defendant, when he left a friend's store in the vicinity of the accident, he observed Rios's truck parked near 103 Mt. Eden Avenue. As he watched, the truck began to move. In an attempt to stop the truck, defendant climbed onto the passenger-side step and got into the truck, moving over to the steering wheel and brake. Defendant stated that he grabbed the wheel but was not able to steer the truck. Moreover, he testified that although he stepped on the brake many times, the truck did not stop and began picking up speed as it approached the intersection with Townsend Avenue. The truck then hit a car, taking off its side mirror. According to defendant, he tried to steer the truck but the wheel would not turn, and there was nothing he could do. The truck then struck pedestrians and other cars. Defendant stated that he never touched the ignition key when he was in the truck, nor did he press the gas pedal. The evidence showed that the speed of the truck, as it proceeded downhill striking vehicles and pedestrians, never exceeded 10 to 20 miles per hour.

After the truck stopped, defendant testified that he got out of the passenger's side and went into a bodega. However, contrary to Montilla's testimony, defendant stated that Montilla was not a friend of his; indeed, defendant asserted that he had never seen Montilla before. Defendant further stated that he did not speak to Montilla after the accident.

In addition to defendant's testimony, an accident investigator testified that the truck was overloaded to almost twice its maximum gross vehicle weight of 8,800 pounds and that the brake fluid reservoir was only two thirds full. Among other defects noted were lack of proper motor vehicle registration and emissions inspection, missing accelerator pedal, and electrical wiring that was exposed and unsecured in a harness. The investigator acknowledged that the truck could move and roll down the hill if left in a gear other than reverse, that steering and braking would be possible but more difficult without the engine running, and that both the low level of brake fluid and

the excess weight of the vehicle (15,800 pounds) would make braking more difficult. The investigator did not test the parking brake.

Whether it is credible that a parked truck should begin moving on its own and whether defendant, although intoxicated, would have been able to climb into a moving truck from the passenger side are not material to the availability of the justification defense, and the People do not suggest as much. Determinations of credibility are for the trier of fact. It is the function of the court to assure that a defendant's guilt is proven beyond a reasonable doubt (*Steele*, 26 NY2d at 528).

A justification defense would not have required the jury to speculate as to a scenario unsupported by any testimony (*cf. People v Bonilla*, 51 AD3d 585 [2008], *lv denied* 11 NY3d 734 [2008]). The jury could have rejected defendant's denial of being intoxicated, particularly since it was contradicted by ample prosecution evidence, while at the same time crediting the balance of his testimony; this is not a case where "no identifiable record basis exists upon which the jury might reasonably differentiate between segments of a witness' testimony" (*People v Negron*, 91 NY2d 788, 792 [1998]). If it made that distinction, the jury could have inferred that defendant took the otherwise reckless risk of driving the truck while in an intoxicated condition in order to prevent the vehicle from causing imminent injury to others, there being no time to take any other action.

As to the law, justification is defined as a defense, not an affirmative defense (Penal Law § 35.00), and the burden of disproving it rests upon the People (Penal Law § 25.00 [1]; *Steele*, 26 NY2d at 528). Where the jury instruction is warranted, either by the defendant's evidence or from the People's case, viewed independently, the failure to disprove it requires reversal of the judgment of conviction on the ground that the defendant's guilt has not been proved beyond a reasonable doubt (*Steele*).

As to the views expressed by the dissent, the omission to charge a jury on justification is only harmless error if no prejudice to the defendant results. Thus, where a trial court instructed the jury on justification with respect to first-degree manslaughter involving intentional conduct, and the defendant was convicted of that offense, he was not prejudiced by the failure to give the instruction with respect to second-degree manslaughter and third-degree assault (*People v Albino*, 104 AD2d 317 [1984], *affd for reasons stated below* 65 NY2d 843 [1985]).

Likewise, it was harmless error to refuse to instruct a jury on justification where the defendant was charged with murder and attempted murder of two police officers since the jury's guilty verdict on the murder charge reflected the implicit finding that the defendant knew or should have known his victims were police officers, and the court's instructions on Penal Law § 35.27 made it clear that the defense of justification was not available under such circumstances (*People v Degondea*, 269 AD2d 243, 245 [2000], *lv denied* 95 NY2d 834 [2000]). Similarly, a trial court's failure to inform the jury that the victim's prior threats against the defendant could be considered in assessing whether the victim was the initial aggressor, in addition to assessing whether the defendant acted reasonably in shooting him, was found to be harmless where the victim, shot in the back of the neck, was unarmed, made no threat toward the defendant and could not have been facing the defendant when shot (*People v Petty*, 7 NY3d 277, 285-286 [2006]). Finally, as previously noted, the People do not suggest that the perceived improbability of defendant's actions is material to the issue of whether it was necessary to instruct the jury on the justification defense. It is for the trier of fact, not this Court, to decide which of the "[t]wo starkly different versions of what happened" is the more credible.

Accordingly, the judgment of the Supreme Court, Bronx County (Robert Torres, J.), rendered June 30, 2008, convicting defendant, after jury trial, of manslaughter in the second degree, assault in the second degree (two counts), vehicular manslaughter in the second degree, vehicular assault in the second degree (two counts), and operating a motor vehicle while intoxicated (two counts), and sentencing him to an aggregate term of 6 to 15 years, should be reversed, on the law, and the matter remanded for a new trial.

McGUIRE, J. (dissenting). I respectfully dissent. With respect to the counts of second-degree manslaughter and assault, the court's refusal to charge the choice-of-evils defense pursuant to Penal Law § 35.05 (2) was correct. With respect to the lesser crimes of which defendant was convicted, operating a motor vehicle while intoxicated and offenses that have as an element the operation of a motor vehicle while intoxicated, any error in refusing to give the charge was inconsequential.

Two starkly different versions of what happened on Mt. Eden Avenue in the Bronx on the afternoon of August 1, 2005 were

presented to the jury. The People's evidence was that defendant, while intoxicated, got into the truck to play a "trick" on the operator and recklessly caused the truck to career down a steep slope on Mt. Eden Avenue, hitting and killing a young boy and seriously injuring two adults. The crux of the defense case, consisting principally of defendant's testimony, was that defendant heroically jumped into the already moving truck in an effort to stop it from moving down the hill and the victims were struck by the truck after all his attempts to stop the truck failed. As the prosecutor argued on summation without contradiction from the defense, "there is one central issue in this case. Everything else flows from the answer to that central issue and [sic] as to the guilt of the defendant, and that central issue is how and why the defendant got behind the wheel of that truck."

In opposing defendant's request for an instruction on the choice-of-evils defense, the prosecutor correctly argued, "What the defendant did, according to the defense theory, was not a crime." Stressing that defendant's position was that "the truck was already moving" and "he was getting into it to try to prevent it from moving," the prosecutor went on to point out that "[i]f that is true, if the jury believes that, then it is not a reckless act, and the jury would have to find defendant not guilty. There is no need for a justification charge. That would confuse the issues even more and does not apply in this case." After taking a short recess, the judge denied the request, stating that he did "not see how a justification charge would be warranted under these particular facts and circumstances." The judge added that he was denying the request "based on [his] reading of the statute, and appropriate case law."[1]

To convict defendant of the second-degree manslaughter count and the second-degree assault counts, the People were required to prove that his conduct recklessly caused death and serious physical injury (Penal Law § 125.15 [1]; § 120.05 [4]). That is, the People were required to prove, inter alia, that defendant's conduct created a "substantial and unjustifiable risk" (Penal Law § 15.05 [3]) of death and serious physical injury, and that he was "aware of and consciously disregard[ed]" each risk. But if defendant jumped into an already moving truck, it would be irrational to think that his conduct created a substantial and unjustifiable risk of either death or serious physical injury, let alone that he was aware of and consciously disregarded either

---

1. Unfortunately, the majority nonetheless refers to the "unexplained" omission of an instruction on the choice-of-evils defense.

risk. If the jury accepted defendant's version, the only rational conclusion it could come to would be that defendant's conduct *reduced* rather than created these risks. Manifestly, the jury could have convicted defendant for committing conduct that created these risks only if it found that the People had proven beyond a reasonable doubt that he entered the parked truck and caused it to start moving.

That defendant was not entitled to an instruction on the choice-of-evils defense also can be seen by supposing that the court had expressly instructed the jury that defendant could be convicted of the second-degree manslaughter and assault counts only if the People proved beyond a reasonable doubt that he got into the truck and caused it to start moving. Had the jury been given such an instruction (or its equivalent, an instruction that the People were required to disprove beyond a reasonable doubt defendant's testimony that he jumped into an already moving truck), the pointless character of an instruction under Penal Law § 35.05 (2) would be all the more evident. To be sure, neither instruction was given—defendant never asked for either—but such an instruction was implicit in the court's correct instructions on both the elements of the second-degree manslaughter and assault offenses and the People's burden of proving every element beyond a reasonable doubt.

Although I agree with the majority that defendant need not have admitted that his conduct recklessly caused death or serious physical injury, there had to be some reasonable view of the evidence supporting the choice-of-evils defense (*People v Cox*, 92 NY2d 1002, 1004 [1998]; *People v Hubrecht*, 2 AD3d 289, 290 [2003], *lv denied* 2 NY3d 741 [2004]). Accordingly, there had to be a reasonable view of the evidence that, inter alia, defendant recklessly caused death or serious physical injury even though he jumped into an already moving truck. Indeed, Penal Law § 35.05 presupposes, as its opening sentence expressly provides, "conduct *which would otherwise constitute an offense*" (emphasis added). Similarly, Penal Law § 35.10 specifies when "[t]he use of physical force upon another person *which would otherwise constitute an offense* is justifiable and not criminal" (emphasis added). When the defendant's commission of an offense is not supported by a reasonable view of the evidence the defense relies upon, a justification charge is unwarranted, pointless and potentially confusing. Here, the notion that defendant jumped into an already moving truck and nonetheless created somehow a grave risk of death or serious physical injury is

simply absurd. Not surprisingly, neither defendant nor the majority outlines or suggests a line of reasoning that would support that notion.

By contrast, if the jury concluded that defendant jumped, or may have jumped, into an already moving truck, the jury reasonably could have found defendant guilty of both counts of operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]). However, if the jury concluded that defendant jumped, or may have jumped, into an already moving truck, whether the jury also reasonably could have found that defendant was guilty of the other lesser crimes with which he was charged is another matter entirely. These crimes, vehicular manslaughter in the second degree (Penal Law § 125.12 [1]) and vehicular assault in the second degree (Penal Law § 120.03 [1]), require proof not only that defendant operated the truck while intoxicated, but that "as a result of such intoxication" (Penal Law § 125.12 [1]; § 120.03 [1]), he "operate[d] such motor vehicle . . . in a manner that cause[d]" (*id.*) death (vehicular manslaughter) or serious physical injury (vehicular assault). Suffice it to say, it is far from obvious how either result was caused not by whoever or whatever caused the truck to career down the hill but by the manner in which defendant operated the truck. (Nor, for that matter, is it at all obvious how any such culpable operation of the truck was the "result" of defendant's intoxication.) The point, however, need not be debated. Even assuming that on defendant's version of the facts a reasonable theory of causality can be articulated, the court's refusal to instruct the jury on the choice-of-evils defense as to these lesser crimes was inconsequential. After all, the jury's verdict establishes that it concluded that the People had proven beyond a reasonable doubt that defendant caused the truck to begin moving, i.e., that defendant had not jumped into an already moving truck in an attempt to stop it. We know the jury so concluded because it was correctly instructed on the elements of the counts charging reckless conduct—second-degree manslaughter (Penal Law § 125.15 [1]) and second-degree assault (Penal Law § 120.05 [4])—and the jury could not rationally have convicted defendant of these crimes if it entertained a reasonable doubt about whether he got into an already moving truck.

Moreover, our cases make clear that in light of the particular facts of a case, a jury's verdict can render irrelevant the issue of whether the jury should have been instructed on a defense (*see e.g. People v Degondea*, 269 AD2d 243, 245-246 [1st Dept 2000],

*lv denied* 95 NY2d 834 [2000] ["as the jury made findings which precluded the defense of justification, the court's refusal to charge the 'defense of a third person' prong of the justification defense did not prejudice him"]; *cf. People v Ruiz*, 223 AD2d 418, 419 [1st Dept 1996], *lv denied* 88 NY2d 853 [1996] [failure to charge lesser included offense of seventh-degree criminal possession of a controlled substance harmless error as "(i)t would be irrational to find that the jury, in considering the possession count, would have credited defendant's claim that he had purchased the . . . glassines for his personal use" and "(t)he verdict itself implies that the error did not affect the result"]). Here, too, for the reasons stated above, the jury's verdict makes clear that defendant was not prejudiced by the court's refusal to instruct the jury on the choice-of-evils defense with respect to the lesser crimes.[2]

Returning to the convictions for second-degree manslaughter and assault, if an instruction under Penal Law § 35.05 (2) nonetheless should have been given, we should affirm just the same. First, as with the lesser crimes, the verdict makes clear that the jury found that the People had proven beyond a reasonable doubt that defendant caused the truck to start moving. Second, the evidence presented on the People's case proving that defendant entered the parked truck and caused it to start moving was overwhelming, and it included damning admissions defendant made immediately after the accident to a man, Carlos Montilla, who testified that he had played dominos with defendant and had known him for some 10 years. Specifically, after asking Montilla how many people he had killed, defendant said that he had been "joking around with the truck," that he "was making a joke and look what I've done." Moreover, defendant's claim that he jumped into the truck only after it started moving was preposterous, particularly because the evidence that defendant was intoxicated also was overwhelming and unrefuted.[3] To accept defendant's story, the jury would have had to believe that

---

2. The majority misses the point when it stresses that "[i]t is for the trier of fact, not this Court, to decide which of the '[t]wo starkly different versions of what happened' is the more credible." The point, of course, is that the jury's verdict makes clear which of these two versions it credited.

3. Contrary to the majority, defendant did not deny either being intoxicated or having consumed alcohol. Neither subject was broached during direct or cross-examination. In the course of testifying that he never gave his consent to having his blood drawn, however, defendant advanced the remarkable claim that at the hospital one of the police officers, not a nurse or doctor, drew his blood.

the truck inexplicably began moving of its own accord and that, despite his intoxication, defendant had the dexterity to climb the high step to the passenger side of the truck as it moved down the hill, pull up the door latch, open the door by pulling it toward his body while balancing on the step of the moving truck, and then clamber over the gear shift after managing to enter. In addition, the jury also would have had to credit defendant's claim that there was nothing he could do to stop or steer the truck, despite expert testimony to the contrary elicited by the People.[4] Putting aside all these incredible aspects of his testimony, defendant failed to give the jury any explanation for why he would have jumped into the truck in the first place. To the contrary, defendant testified that before he got into the cab of the moving truck he could not see inside the cab. As for the damning testimony from Carlos Montilla, defendant sought to neutralize it only with the confounding claim that he did not know and had never seen him before. Defendant offered nothing by way of an explanation for Montilla's willingness to falsely accuse him. In short, if it was error not to charge the jury under Penal Law § 35.05 (2) as to the second-degree manslaughter and assault convictions, any error was harmless (see People v Petty, 7 NY3d 277, 285-286 [2006] [erroneous omission in justification charge harmless error]). For these same reasons, any error in not charging the jury on the choice-of-evils defense as to the lesser charges also was harmless.

Finally, defendant's challenges to the prosecutor's summation are meritless and warrant no discussion; also meritless is his claim that the concurrent sentences (the longest of which are an indeterminate sentence of 5 to 15 years on the second-degree manslaughter count and determinate terms of six years on each of the second-degree assault counts) are excessive.

DeGrasse and Freedman, JJ., concur with Tom, J.P.; Sweeny and McGuire, JJ., dissent in a separate opinion by McGuire, J.

Judgment, Supreme Court, Bronx County, rendered June 30, 2008, reversed, on the law, and the matter remanded for a new trial.

---

4. Although the majority notes the accident investigator's testimony that "the brake fluid reservoir was only two thirds full," it does not mention the witness' testimony that although the fluid "was a little low," "[t]here was sufficient pressure while the vehicle was running to tell me that there was no problem with the brakes at that particular point." Nor does the majority mention the same witness' testimony that even with the ignition off, "the foot brake would work. It would be a little harder to push, but it would work."