People v Abussalam (2021 NY Slip Op 04580)





People v Abussalam


2021 NY Slip Op 04580


Decided on July 29, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 29, 2021

110542
[*1]The People of the State of New York, Respondent,
v
Saifur R. Abussalam, Appellant.

Calendar Date:June 3, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Adam H. Van Buskirk, Auburn, for appellant, and appellant pro se.
Michael A. Korchak, District Attorney, Binghamton (Eric H. Gartenman of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered August 17, 2018, upon a verdict convicting defendant of the crime of attempted assault in the first degree.
On the morning of July 30, 2017, residents of an apartment complex in the City of Binghamton, Broome County called 911 after hearing a woman calling for help. Police officers responded and observed blood on the exterior staircase at the rear of the building and on a porch extending from a rear first-floor apartment. Eventually, the police searched a first-floor apartment and found defendant and the victim, the latter of whom was bleeding from an injury to her forehead. Defendant was detained at the scene while the victim was transported to the hospital, where she was treated for four fractured ribs, a punctured lung, a fractured eye socket, a laceration to her forehead and bruising on her neck, back, arms and wrist. During a police interview at the hospital, the victim reported that defendant hit her with his fist. Three days later, the victim provided a more detailed statement regarding the incident, in which she alleged that defendant hit her with a rock and the shaft of a golf club.
Defendant was subsequently charged by indictment with one count of assault in the first degree. After a jury trial, defendant was convicted of the lesser included offense of attempted assault in the first degree. County Court sentenced defendant to a prison term of 13 years, followed by five years of postrelease supervision. Defendant appeals.
Initially, defendant contends that County Court erred in denying his motion to dismiss the indictment as duplicitous because the indictment was based on defendant striking the victim with both a rock and a golf club, resulting in two distinct injuries. We disagree. CPL 200.30 (1) provides that each count of an indictment may charge only one offense. As such, "a count is duplicitous when it charges more than one crime that is completed by a discrete act in the same count" (People v Kalabakas, 183 AD3d 1133, 1136 [2020] [internal quotation marks and citation omitted], lv denied 35 NY3d 1067 [2020]). However, "[a]s a general rule[,] it may be said that where a defendant, in an uninterrupted course of conduct directed at a single victim, violates a single provision of the Penal Law, he [or she] commits but a single crime" (People v Flanders, 25 NY3d 997, 1000 [2015] [internal quotation marks, ellipsis and citation omitted]).
As relevant here, the indictment charged that defendant, "with intent to cause serious physical injury to another person, did cause such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." In response to defendant's demand for a bill of particulars, the People particularized the allegations as follows: defendant "did physically assault [the victim] by striking her in her face with a rock or piece of broken concrete, causing serious physical injury to [*2]her face. In addition, at the same date, time and location . . . defendant . . . did strike [the victim] with a golf club shaft on her back and sides causing her serious physical injury." This assault, in our view, consisted of multiple acts perpetrated against the victim as part of a continuous course of conduct — over a short period of time — and was triggered by a single incident of anger. As defendant's actions — striking the victim in the face with a rock and then striking the victim's back and sides with a golf club shaft as she attempted to flee — constituted an uninterrupted course of conduct directed at a single person, the indictment was not duplicitous (see People v Flanders, 25 NY3d at 1000; People v Wells, 141 AD3d 1013, 1015 [2016], lvs denied 28 NY3d 1183, 1189 [2017]; People v Hines, 39 AD3d 968, 969-970 [2007], lv denied 9 NY3d 876 [2007]).
Defendant also contends that County Court erred in denying his pretrial motion to dismiss the indictment pursuant to CPL 190.50 (5) (a) upon the ground that he was not given a reasonable amount of time prior to the grand jury proceeding to consult with counsel as to whether he should testify. "Where, as here, a defendant has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding, the [People] must notify the defendant or his or her attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his or her right to appear as a witness therein" (People v Wilkerson, 140 AD3d 1297, 1299 [2016] [internal quotation marks, brackets, ellipses and citations omitted], lv denied 28 NY3d 938 [2016]; see People v Graham, 185 AD3d 1221, 1222 [2020], lv denied 36 NY3d 929 [2020]). "The statute does not mandate a specific time period for notice; rather reasonable time must be accorded to allow a defendant an opportunity to consult with counsel and decide whether to testify before a grand jury" (People v Clark, 182 AD3d 703, 704 [2020] [internal quotations marks, brackets and citation omitted]). In this context, "[t]he concept of reasonableness is flexible and must be applied to the particular facts of a case as known at the time" (People v Gannon, 174 AD3d 1054, 1056 [2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 980 [2019]).
Defendant was arraigned on a felony complaint charging assault in the second degree and assault in the third degree in July 2017 and initially was assigned counsel from the Broome County Public Defender's office. On or about August 3, 2017, the People sent a grand jury notice to counsel's office and the Broome County jail, where defendant was being detained, stating that the case would be presented to a grand jury on August 8, 2017. In response, the Assistant Public Defender provided the People with certain waivers, a plea offer was made and the case was removed from the grand [*3]jury term. When it appeared that defendant was not going to accept the plea, a second grand jury notice was sent to counsel and defendant informing them that the case would be presented to the grand jury on September 6, 2017. In the interim, defendant was assigned new counsel. It is undisputed that the newly assigned counsel promptly received this second notice.
On September 6, 2017, defendant appeared for the grand jury proceeding and stated that, although he would testify, he would not sign a waiver of immunity. The parties appeared before County Court the following day, whereupon defendant's counsel was released from representing him. County Court agreed to assign new counsel, but cautioned the People that if new counsel was not assigned quickly enough, the matter would have to be re-presented to the grand jury or the term extended to afford defendant adequate time to meet with counsel and make an informed decision as to whether he would testify. New counsel met with defendant within five hours of said appearance, and again the following day, and thereafter advised the People that defendant wished to testify before the grand jury. When defendant appeared at the grand jury proceeding on September 8, 2017, he confirmed that he had an opportunity to discuss testifying with counsel but stated that he did not have sufficient time to review his case with counsel. The People thereafter informed the grand jury that defendant was not going to testify and proceeded to provide an instruction that no unfavorable inference could be drawn from his decision. The People presented the case and secured the underlying indictment charging assault in the first degree.
The record demonstrates that defendant had a reasonable period of time to consult with counsel prior to and during the grand jury proceeding, and in fact was afforded an opportunity to consult with more than one attorney regarding his decision to testify. Although counsel was not assigned to represent defendant until one day prior to the grand jury proceeding, this Court has consistently held that approximately 24 hours or less is a reasonable period of time to confer with counsel regarding a defendant's decision to testify (see People v Graham, 185 AD3d at 1223; People v Miller, 160 AD3d 1040, 1041 [2018], lv denied 32 NY3d 939 [2018]; People v Dorsey, 151 AD3d 1391, 1393 [2017], lv denied 30 NY3d 949 [2017]). Thus, County Court properly denied defendant's motion to dismiss the indictment on this basis.
Next, defendant challenges the verdict as legally insufficient and against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, [this Court must] view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof [*4]and burden requirements for every element of the crime charged" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 993 [2020]; see People v Nunes, 168 AD3d 1187, 1187-1188 [2019], lv denied 33 NY3d 979 [2019]). "In reviewing whether a conviction is supported by the weight of the evidence, we decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Maeweather, 172 AD3d 1646, 1647 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1017 [2019]; see People v Saylor, 173 AD3d 1489, 1490 [2019]). "When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Conway, 179 AD3d 1218, 1218 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 941 [2020]).
As relevant here, "a conviction for attempted assault in the first degree requires proof that, '[w]ith intent to cause[] serious physical injury to another person,' the defendant attempted to 'cause such injury . . . by means of a deadly weapon [or dangerous instrument]'" (People v Daniels, 174 AD3d 955, 956 [2019], lvs dismissed 34 NY3d 950, 952 [2019], quoting Penal Law § 120.10 [1]; see Penal Law § 110.00). Serious physical injury, as relevant here, is defined as a "physical injury which creates a substantial risk of death, or which causes . . . protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). In assessing whether an item constitutes a dangerous instrument, the Court of Appeals has adopted a "use-oriented approach," holding that any instrument, "no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury. The object itself need not be inherently dangerous. It is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute" (People v Carter, 53 NY2d 113, 116 [1981] [internal quotation marks and citations omitted]).[FN1]
At trial, the victim testified that defendant threw her down the stairs from the second floor to the stairwell landing. From there, defendant continued to shove her down the next set of stairs until they were outside. She then fell against a car, at which point defendant hit her once with a rock on the right side of her face. The victim stumbled to the ground and, as she attempted to run towards another apartment, defendant began hitting her on her back and left side with a golf club, which was comprised of the shaft only. The victim further testified that she eventually reached and entered [*5]an apartment, but defendant followed her, told her to take a shower to wash off the blood, stated that he was going to kill her and thereafter refused to take her to the hospital.
Defendant's testimony presented a different version of events. Although he admitted that he pushed the victim and that she fell down the stairs "very hard," he said that he then ran down the stairs, picked her up and walked her outside. Defendant testified that, as the two began to argue, he punched the victim in the eye with his left hand. Defendant explained that he then walked to the first-floor apartment and the victim followed him. While in the apartment, a third party emerged from an adjacent room holding a kitchen knife and, in response, defendant threw a kitchen chair at him. Meanwhile, the victim jumped on his back and began choking him. In an effort to dislodge her, defendant purposely fell backwards onto his back and landed in the bathroom with the victim underneath him. Defendant testified that he then hit the victim in her side and shoulder. Defendant denied ever wielding a rock or golf club against the victim.
Viewing the evidence in the light most favorable to the People, we find the evidence was legally sufficient to support the verdict. Defendant's intent to cause serious injury was readily inferable both from his actions and the severity of the victim's injuries (see People v Lewis, 46 AD3d 943, 945 [2007]; People v Terk, 24 AD3d 1038, 1039 [2005]), one of which a physician described as "life threatening." Further, although a different verdict would not have been unreasonable had the jury credited defendant's testimony over that of the victim, viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we conclude that the verdict is supported by the weight of the evidence (see People v Daniels, 174 AD3d at 957; People v Johnson, 107 AD3d 1161, 1163 [2013], lv denied 21 NY3d 1075 [2013]). The jury rejected defendant's version of events, and, in so doing, also rejected his claim that he restricted his assault to the use of his hands and fists and, therefore, no dangerous instrumentality was involved (see People v Barker, 223 AD2d 899, 900 [1996], lv denied 88 NY2d 964 [1996]; People v Adames, 180 AD2d 804, 804 [1992]).
Defendant next asserts that the People's failure to present the first-floor tenant's supporting deposition as exculpatory evidence impaired the integrity of the grand jury proceeding. To the extent that this issue has been preserved for our review, we find it lacking merit. "[T]he People generally enjoy wide discretion in presenting their case to the grand jury and are not obligated to search for evidence favorable to the defense or to present all evidence in their possession that is favorable to the accused even though such information undeniably would allow the grand jury to make a more informed determination. Nor do the People have the same obligation of disclosure at the [*6]grand jury stage as they have at the trial stage" (People v Goldston, 126 AD3d 1175, 1177 [2015] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 25 NY3d 1201 [2015]). Defendant contends that the tenant's supporting deposition, setting forth that defendant punched the victim in the ribs while in the bathroom, was exculpatory because it supported his version of the incident. The tenant testified before the grand jury in a manner that did not differ materially from her supporting deposition statement, and both the tenant's supporting deposition and her grand jury testimony were consistent with the victim's initial statement. Moreover, neither the tenant's supporting deposition nor her grand jury testimony contradicted the assertion that defendant also wielded the golf club and the rock against the victim while outside of the apartment. As such, the tenant's supporting deposition was not exculpatory and likely "would not have materially influenced the grand jury's investigation" (People v Hubsher, 176 AD3d 972, 973 [2019], lv denied 34 NY3d 1159 [2020]; see People v Butler, 148 AD3d 1540, 1542 [2017], lv denied 29 NY3d 1090 [2017]).
We are unpersuaded that County Court erred in failing to assign defendant new counsel upon counsel's admission at a pretrial conference that there may have been a breakdown in the attorney-client relationship. "The right to representation by counsel does not encompass a right to appointment of successive lawyers at the defendant's option, but the right to be represented by counsel of one's own choosing is a valued one, and a defendant may be entitled to new assigned counsel upon showing good cause for a substitution, such as a conflict of interest or other irreconcilable conflict with counsel" (People v Brown, 154 AD3d 1004, 1005 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1113 [2018]). "Good cause determinations are necessarily case-specific and therefore fall within the discretion of the trial court. When assessing whether an appointment of new counsel is warranted, the court may consider a variety of factors, including whether present counsel is reasonably likely to afford a defendant effective assistance" (People v Gutek, 151 AD3d 1281, 1282 [2017] [internal quotation marks and citations omitted]). The record demonstrates that County Court appropriately conducted an inquiry into defendant's request for new counsel, found defendant's claims regarding counsel's failure to raise issues with the court and to communicate with defendant did not establish good cause for substitution and noted that counsel was competent and that the case was ready for trial. Accordingly, County Court's denial of defendant's request for substitution of new counsel was a proper exercise of the court's discretion (see People v Smith, 18 NY3d 588, 593 [2012]; People v Linares, 2 NY3d 507, 511-512 [2004]).
Defendant further asserts that County Court erred in denying his trial [*7]motion for dismissal based on the People's failure to include the element of intent in their opening statement. "Although the Criminal Procedure Law does not specify the requisite contents of the prosecutor's opening statement, at a minimum the prosecutor generally should set forth the nature of the charge against the accused and state briefly the facts he [or she] expects to prove, along with the evidence he [or she] plans to introduce in support of the same. . . . That is not to say that the prosecutor must reveal all the evidence he [or she] intends to offer during the trial, but certainly the jury should hear sufficient evidence to intelligently understand the nature of the case [it has] been chosen to decide" (People v Kurtz, 51 NY2d 380, 384 [1980], cert denied 451 US 911 [1981]; see People v Baltes, 75 AD3d 656, 660 [2010], lv denied 15 NY3d 918 [2010]).
During the prosecutor's opening and supplemental opening, he described the nature of the crime charged and mentioned the expected evidence and witnesses. Although the prosecutor did not specifically reference intent, he adequately described the People's theory of the case and their intention to prove that defendant's conduct caused the victim to sustain serious physical injuries by the use of dangerous instruments, i.e., the rock and the golf club. As such, we find that the prosecutor presented sufficient information to enable the jury to intelligently understand the nature of the case (see People v Manchester, 123 AD3d 1285, 1288 [2014], lv denied 26 NY3d 931 [2015]; People v Chamberlain, 178 AD2d 783, 783-784 [1991], lv denied 79 NY2d 945 [1992]; People v Adams, 139 AD2d 794, 795 [1988]).
Next, defendant contends that the People improperly referenced uncharged crimes by eliciting testimony from the victim regarding the incident, including her description of defendant's altercation with the third party and his threat to kill her. This matter is not preserved for appeal as defendant failed to raise this Molineux objection either pretrial or in response to the trial testimony (see People v Murray, 155 AD3d 1106, 1110-1111 [2017], lv denied 31 NY3d 1015 [2018]), and also neglected to request any limiting instruction in this regard (see People v Tyrell, 82 AD3d 1352, 1356 [2011], lv denied 17 NY3d 810 [2011]). Even if defendant had preserved this claim, it is without merit because the challenged statements were part of the witness's narrative describing the incident and were directly relevant to defendant's intent (see People v Pope, 96 AD3d 1231, 1234-1235 [2012], lv denied 20 NY3d 1064 [2013]).
Defendant further asserts that County Court improperly permitted the prosecutor to repeatedly refer to the victim as a "victim of domestic violence" during his summation. A prosecutor is afforded wide latitude during summations, as long as his or her statements are not so egregious as to deprive a defendant of a fair trial (see People v Rupnarine, 140 AD3d 1204, 1205 [2016]). The prosecutor's [*8]references to domestic violence were not so flagrant or pervasive in the context of the entire summation as to deprive defendant of a fair trial (see People v Johnson, 183 AD3d 77, 90 [2020], lv denied 35 NY3d 993 [2020]; People v Heiserman, 127 AD3d 1422, 1424 [2015]). Moreover, such references "were fair comment on the evidence and the reasonable inferences to be drawn therefrom" (People v Anderson, 29 NY3d 69, 73 [2017], cert denied ___ US ___, 138 S Ct 457 [2017]) — particularly in view of defendant's testimony regarding the nature of his relationship with the victim and the impetus for the admitted altercation.
Defendant also contends that County Court erred in its charge to the jury by failing to adequately inform it that the jury, not the court, was responsible for making the determination as to whether the rock and the golf club were dangerous instruments. "Inasmuch as defendant did not object to the charge that was given or request different or additional language, this issue is unpreserved for our review, and we decline defendant's invitation to set aside the jury's verdict in the interest of justice" (People v Gray, 151 AD3d 1470, 1475 [2017] [internal quotation marks, brackets and citations omitted], lv denied 30 NY3d 949 [2017], cert denied ___ US ___, 138 S Ct 1295 [2018]; see People v McClenos 172 AD3d 1638, 1640 [2019], lv denied 33 NY3d 1107 [2019]). In any event, "we are satisfied that the court's charge, taken as a whole, conveyed to the jury the correct standard" (People v Gray, 151 AD3d at 1475 [internal quotation marks and citations omitted]).
Defendant also claims in his pro se submission that he was denied the effective assistance of counsel. To the extent that he asserts that counsel gave him misinformation regarding County Court's ability to grant requests to charge lesser included offenses, this issue is more properly the subject of a CPL article 440 motion as counsel's alleged statements do not appear on the face of the record (see People v Aponte, 190 AD3d 1031, 1033 [2021], lvs denied 37 NY3d 953, 959, 960 [2021]). Further, "[t]here is nothing in the record to suggest that defendant's decision to testify was anything other than voluntary, and the fact that he may now regret that decision does not establish that he was denied meaningful representation" (People v Varmette, 70 AD3d 1167, 1172 [2010], lv denied 14 NY3d 845 2010]).
Lastly, we reject defendant's contention that the sentence was harsh and excessive and was imposed to penalize him for asserting his right to trial. County Court clearly acknowledged that defendant exercised his constitutional right to trial and that he was "not being punished for going to trial." Notwithstanding defendant's comparatively minimal criminal history, the sentence was based upon appropriate sentencing factors, including the circumstances of the crime and the violent nature of the attack, and we discern no abuse of discretion or extraordinary circumstances that would warrant [*9]a reduction of the sentence in the interest of justice (see People v Rawlinson, 170 AD3d 1425, 1430 [2019], lv denied 33 NY3d 1107 [2019]; People v Gill, 168 AD3d 1140, 1142 [2019]; People v Brown, 123 AD3d 1298, 1299 [2014], lv denied 25 NY3d 1199 [2015]). Any contentions not specifically addressed have been reviewed and found to be lacking in merit.
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: To support a conviction for attempted assault in the first degree, the People do not need to prove that the victim sustained a serious physical injury (see People v Daniels, 174 AD3d at 956 n 2).