People v Tenace (2024 NY Slip Op 03784)

People v Tenace

2024 NY Slip Op 03784

Decided on July 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 11, 2024

CR-23-0585
[*1]The People of the State of New York, Respondent,
v
Troy M. Tenace, Appellant.

Calendar Date:June 3, 2024

Before:Garry, P.J., Clark, Aarons, Pritzker and McShan, JJ.

Danielle Neroni Reilly, Albany, for appellant.
G. Scott Walling, Special Prosecutor, Slingerlands, for respondent.

McShan, J.
Appeal from a judgment of the County Court of Saratoga County (James A. Murphy III, J.), rendered March 6, 2023, upon a verdict convicting defendant of the crimes of assault in the first degree, assault in the second degree (two counts) and criminal obstruction of breathing or blood circulation.
In March 2022, defendant was charged by indictment with assault in the first degree, two counts of assault in the second degree and criminal obstruction of breathing or blood circulation stemming from an altercation in September 2021 involving defendant's former girlfriend and her father in the Town of Ballston, Saratoga County. After an eight-day jury trial, defendant was convicted as charged and subsequently sentenced on the assault in the first degree conviction to a prison term of 15 years, to be followed by five years of postrelease supervision, and to lesser concurrent terms of incarceration for the remaining convictions. Defendant appeals.
Turning first to his legal sufficiency and weight of the evidence arguments, defendant contends that the People failed to establish that he used a weapon during the commission of the crime and that he intended to cause serious physical injury to the father.[FN1] Although defendant raised this contention in his motion to dismiss the indictment at the close of the People's proof, "his failure to renew such motion at the close of his proof renders his challenge to the legal sufficiency of the evidence unpreserved" (People v Oates, 222 AD3d 1271, 1272 [3d Dept 2023]). "Nevertheless, our assessment of defendant's challenge to the weight of the evidence requires that we confirm whether the People proved each element beyond a reasonable doubt, and we do so while considering the evidence in a neutral light with deference to the jury's resolutions on witness credibility" (People v Mercer, 221 AD3d 1259, 1260 [3d Dept 2023] [citations omitted], lv denied ___ NY3d ___ [May 6, 2024]).
The trial evidence established that, on a rainy evening in September 2021, law enforcement responded to a 911 call at defendant's home, where they encountered the father sitting in a chair at the end of defendant's driveway with bruising around his eye and a significant laceration to the back of his head. The girlfriend testified that she and defendant had been arguing earlier that evening concerning her discovery that he had fathered a child with another woman. According to the girlfriend, defendant would not allow her to leave and directed her to remain in the bedroom. At some point, the argument continued and, after the girlfriend took defendant's phone from him, he put her in a choke hold and dragged her across the kitchen. When defendant eventually let go of her, the girlfriend called her mother on the phone and asked that she come get her. The girlfriend's mother and grandmother arrived shortly after, accompanied by the father.
The testimony established that the father then told defendant that they needed to talk and asked him to come outside[*2], prompting defendant to jump off the couch in an "agitated" state and head out the door. After the two headed outside, defendant went around the side of a detached garage on the property, where he first retrieved a garbage can and threw it at the father. Defendant then went back around the side of the garage and, according to the girlfriend and the father, when he emerged, he approached the father from the side and struck him in the head with a shovel. After he was hit, the father fell to the driveway and, while the father was lying on his back, defendant stood over the father and struck him in the face with his fists. Eventually, the girlfriend pulled defendant off the father and she then called 911. During that call, she informed the dispatcher that defendant had just beaten the father up, that the father was bleeding from his head and that he was unconscious. She did not indicate to the dispatcher that a shovel had been used in the attack. The girlfriend provided details of the attack to responding law enforcement but again made no mention of a shovel at that time, which she attributed to a desire to protect defendant. Nevertheless, at trial, she testified that she recognized the shovel, that she and defendant had stored it behind the garage and that when she went back to their house a few days later, the shovel was gone. Meanwhile, the father informed a responding paramedic who treated him at the scene that defendant had hit him in the back of the head with a shovel. After the altercation, the father was transported to the hospital, where he was treated for his injuries, including the laceration in the back of his head, a depressed skull fracture, bleeding in his brain and an ankle fracture. Law enforcement returned to the home that night and searched for a shovel but ultimately never recovered the instrument.
Here, a different verdict would not have been unreasonable had the jury rejected the girlfriend and the father's account, as they were the only individuals to testify to defendant's use of a shovel during the altercation. To this end, defendant's arguments are largely directed at testimony pertaining to the adequacy of the search for the shovel by law enforcement, the lack of testimony from any other eyewitness that placed a shovel on defendant's person immediately after the altercation and the failure of any treating provider to definitively attribute the wound to a strike from a shovel. Nevertheless, viewing the evidence in a neutral light and deferring to the jury's resolutions on witness credibility, the determination that defendant utilized a shovel in the altercation was supported by the weight of the evidence and we discern no reason to disturb it (see People v Abussalam, 196 AD3d 1000, 1006 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]; People v Watson, 174 AD3d 1138, 1140 [3d Dept 2019], lv denied 34 NY3d 955 [2019]; People v Williams, 161 AD3d 1296, 1297-1298 [3d Dept 2018], lv denied 32 NY3d 942 [2018]).[FN2] Further, defendant's [*3]intent to cause serious harm was readily inferable from his conduct and the severity of the father's injuries (see People v Fisher, 221 AD3d 1355, 1358 [3d Dept 2023], lv denied 40 NY3d 1092 [2024]; People v Abussalam, 196 AD3d at 1006; People v Lewis, 46 AD3d 943, 945 [3d Dept 2007]). Although the testimony reflects some inconsistency in the various accounts of the altercation and the reporting to first responders in the aftermath, we find that the jury verdict pertaining to defendant's assault charges is adequately supported and is not against the weight of the evidence (see Penal Law §§ 120.05 [1], [2]; 120.10 [1]; 10.00 [13]).
However, consistent with our recent holding in People v Heidrich (226 AD3d 1096 [3d Dept 2024]), we find merit to defendant's contention that County Court's empaneling of an anonymous jury in his case was in error. We again note that the practice of empaneling an anonymous jury contains no statutory justification, as CPL 270.15 (1-a) merely permits the withholding of residential or business addresses of prospective jurors upon a showing of good cause (see People v Heidrich, 226 AD3d at 1098; People v Flores, 153 AD3d 182, 189 [2d Dept 2017], affd 32 NY3d 1087 [2018]; see also CPL 270.15 [1]). While the Court of Appeals has not explicitly sanctioned the practice, it has suggested that, at the very least, "doing so is error where no 'factual predicate for the extraordinary procedure' has been shown" (People v Heidrich, 226 AD3d at 1099, quoting People v Flores, 32 NY3d 1087, 1088 [2018]). To that end, the People concede, and we agree, that the record contains no factual support for utilizing an anonymous jury in this case. Instead, the People focus their arguments on defendant's failure to preserve the issue by consenting to the practice, alongside the contention that the error was, in any event, harmless. On the latter point, we need only note that we recently rejected the applicability of a harmless error analysis to this manner of error (see People v Heidrich, 226 AD3d at 1099; see also People v Flores, 153 AD3d at 193-195). As to preservation, although defendant concedes his failure to object during pretrial proceedings, he asks that we take corrective action in the interest of justice (see CPL 470.15 [6] [a]; see also People v Nellis, 217 AD3d 1056, 1062 [3d Dept 2023]).[FN3] Considering the totality of circumstances, including the potential effect on the fairness of trial that flows from the decision to utilize an anonymous jury without any justification (see People v Flores, 153 AD3d at 195), we find such action is appropriate. We therefore exercise our interest of justice jurisdiction and grant defendant a new trial. Defendant's remaining arguments are rendered academic by our determination.[FN4]
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Saratoga County for a new trial.

Footnotes

Footnote 1: Defendant's failure to address his conviction for criminal obstruction of breathing or blood circulation on appeal renders any challenge to the evidence supporting that conviction abandoned (see People v Miranda, 163 AD3d 1168, 1169 n [3d Dept 2018], lv denied 32 NY3d 1066 [2018]).

Footnote 2: To the extent defendant suggests that the testimony of the girlfriend and the father should be completely discounted based on their lack of credibility, that argument is first raised in his reply brief and we therefore may not address it (see People v Ackerman, 173 AD3d 1346, 1348-1349 [3d Dept 2019], lv denied 34 NY3d 949 [2019]). In any event, were we to do so, we disagree with the premise that both witnesses were incredible as a matter of law (see People v Osman, ___ AD3d ___, ___, 2024 NY Slip Op 03106, *4-5 [3d Dept 2024]).

Footnote 3: Defendant's contention that the empanelment of an anonymous jury implicates the mode of proceedings is raised improperly for the first time in his reply brief and, therefore, we do not address whether County Court's error falls within this narrow exception to the preservation requirement (see People v Kreutter, 121 AD3d 1534, 1535 [4th Dept 2014], lv denied 25 NY3d 990 [2015]; see generally People v King, 27 NY3d 147, 153 [2016]).

Footnote 4: As to County Court's decision to eschew the use of the mechanical means of selecting jurors in favor of the court simply calling upon those seated in the courtroom, although we need not opine on the legality of that procedure in light of our decision to remit for a new trial based upon the improper empaneling of an anonymous jury, we nevertheless caution that the practice be avoided (see People v Williams, 2 NY3d 725, 726 [2004]) in order to forestall the impression that the court is playing too great of a role in the actual selection of the jury and allowing its own bias to pervade the process (see People v Batticks, 35 NY3d 561, 565 [2020]; Hildreth v City of Troy, 101 NY 234, 239 [1886]; see generally People v Blackmond, 212 AD2d 402, 402 [1st Dept 1995], lv denied 85 NY2d 969 [1995]). On that note, the procedure employed by County Court renders meaningful appellate review as to whether any inappropriate factors pervaded the process substantially difficult, if not impossible (see generally People v Degondea, 269 AD2d 243, 243 [1st Dept 2000], lv denied 95 NY2d 834 [2000]; People v Rodriguez, 177 AD2d 269, 269 [1st Dept 1991]).