People v McCabe (2020 NY Slip Op 02288)





People v McCabe


2020 NY Slip Op 02288


Decided on April 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 16, 2020

108335

[*1]The People of the State of New York, Respondent,
v
Chauncey R. McCabe, Appellant.

Calendar Date: February 10, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Robert M. Cohen, Ballston Lake, for appellant.
Chad W. Brown, District Attorney, Johnstown (Kathleen M. Hofmann of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Fulton County (Hoye, J.), rendered July 8, 2015, upon a verdict convicting defendant of the crimes of assault in the first degree, strangulation in the first degree and criminal possession of a weapon in the fourth degree.
Defendant was charged by indictment with attempted murder in the second degree, assault in the first degree, strangulation in the first degree and criminal possession of a weapon in the fourth degree based upon allegations that he strangled his girlfriend (hereinafter the victim) on August 9, 2014. After a jury trial, defendant was acquitted of attempted murder in the second degree and convicted of the remaining charges. County Court sentenced defendant to a prison term of 15 years, with five years of postrelease supervision, for his assault conviction and his strangulation conviction and to a term of one year for his criminal possession conviction, all sentences to run concurrently. Defendant appeals.
Defendant contends that his convictions for assault in the first degree and strangulation in the first degree were not supported by legally sufficient evidence and were against the weight of evidence as the People failed to prove the requisite intent necessary for both crimes. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Hernandez, 180 AD3d 1234, 1235 [2020] [internal quotation marks and citations omitted]). In contrast, "[w]hen undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]; see People v Vega, 170 AD3d 1266, 1268 [2019], lv denied 33 NY3d 1074 [2019]).
As relevant here, to convict defendant of assault in the first degree, it was the People's burden to prove that defendant, "[w]ith intent to cause serious physical injury to another person, cause[d] such injury . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). A "'[d]angerous instrument' means any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). As to strangulation in the first degree, the People had to prove that defendant intended "to impede the normal breathing or circulation of the blood of another person [by applying] pressure on the throat or neck of such person" and "thereby causing serious physical injury to such person" (Penal Law §§ 121.11, 121.13). "'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of a bodily organ" (Penal Law § 10.00 [10]).
The relevant testimony adduced at trial reflected that when Lucas Nellis, a police officer, arrived at the scene, defendant was seated in the driveway of the residence. When defendant saw Nellis, he told him, "I take full responsibility for what I've done." When the officer entered the residence, he found the victim lying on the floor with blood on her face, bruising on the right side, convulsing and making a gurgling sound. A senior investigator testified that she collected evidence at the scene, including a rope on the couch and rope fibers around the room. She further testified that defendant had scratches on his right forearm and lacerations on the inside of his right arm. The emergency physician who treated the victim testified that the victim had what appeared to be rope marks around her neck. The surgeon who treated her testified both to her numerous broken bones and the "strangulation type" abrasions. The People also introduced proof that defendant had sent a Facebook message to a friend on the night of the incident that read, "OMG I need H-R-L-P . . . my gf attack me, and I fought back. I choked her. I swear I didn't mean it." The victim testified that she had no memory of the incident. Defendant claimed that the victim was the initial aggressor and that the majority of her injuries were the result of a fall.
Viewing the evidence in the light most favorable to the People, we find that the proof was legally sufficient to support the convictions of assault in the first degree and strangulation in the first degree (see People v Ackerman, 173 AD3d 1346, 1349 [2019], lv denied 34 NY3d 949 [2019]). Further, although a contrary result would not have been unreasonable, viewing the record evidence in a neutral light, we find that the verdict as to these convictions was supported by the weight of the evidence (see People v Greenfield, 167 AD3d 1060, 1062 [2018], lv denied 32 NY3d 1204 [2019]).
Next, defendant contends that County Court committed reversible error in denying his motion to suppress the statements that he made to Nellis while he was handcuffed in the back of the patrol vehicle prior to being read his Miranda rights. In general, statements obtained by the police from a suspect in custody are only admissible if made after the individual has been advised of his or her constitutional rights and knowingly and intelligently waives them. "A suspect's custodial status is a fact-driven determination that is largely dependent on the circumstances that existed when the statements were made" (People v Vieou, 107 AD3d 1052, 1053 [2013] [internal quotation marks and citations omitted]). The burden is on the People to prove, beyond a reasonable doubt, that the individual was not in custody before Miranda rights were given (see People v Moore, 162 AD3d 1123, 1125 [2018]). "[T]he ultimate question to be answered is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave at the time he or she was being questioned" (People v McCoy, 89 AD3d 1218, 1219 [2011] [internal quotation marks and citation omitted], lv denied 18 NY3d 960 [2012]).
The facts here are largely uncontroverted. After Nellis arrived at the scene and discovered defendant in the driveway, he entered the residence and found the victim being treated by defendant's mother. The victim was convulsing and making gurgling sounds, and Nellis observed bruises and dried blood on her face. Nellis radioed emergency services to respond immediately, exited the residence and informed defendant that he was being detained for questioning. The officer did not immediately ask defendant what happened, but, after defendant was handcuffed and placed in the backseat of the patrol car, Nellis asked defendant, "What happened?" In response, defendant told him that he "snapped" and he "wanted her to feel the pain he had." Defendant also admitted, "I choked her with a rope but never struck her in the face." County Court allowed the statements, reasoning that the purpose of Nellis' questioning was to clarify the nature of the volatile situation rather than to elicit evidence of a crime. We disagree.
The incident had been completed, the parties had been identified and medical assistance requested; defendant had been cooperative and responsive. "[W]here criminal events have been concluded and the situation no longer requires clarification of the crime or its suspects, custodial questioning will constitute interrogation" (People v Rifkin, 289 AD2d 262, 263 [2001], lv denied 97 NY2d 759 [2002]. The People's assertion that a reasonable person in this situation would have believed that he or she was not in police custody and was free to leave at any time begs credulity. Rather, we find that once defendant was handcuffed and placed in the back of Nellis' vehicle, he was in custody and, as such, his responses to Nellis' questions, made prior to the Miranda warnings, should have been suppressed as they were "the product of custodial interrogation" (People v Evans, 294 AD2d 918, 919 [2002], lv dismissed 98 NY2d 768 [2002]; see People v Rifkin, 289 AD2d at 263). Given Nellis' testimony regarding the sequence of events that occurred after arriving at the scene, particularly that Nellis had already generally asked defendant what had occurred and had already called for emergency medical services, which had not yet arrived, we do not find that the emergency exception is applicable (compare People v Lang, 164 AD3d 963, 965 [2018]).
Having found that there was error, we must now determine whether the error was harmless. The right against self-incrimination is guaranteed by both the US and NY Constitutions (see US Const 5th Amend; NY Const, art I, § 6). A constitutional error can only be harmless if it is found to be harmless beyond a reasonable doubt — i.e., the evidence of the defendant's guilt, without reference to the error, is overwhelming such that there is no reasonable possibility that the error might have contributed to the defendant's conviction (see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Harris, 93 AD3d 58, 71 [2012], affd 20 NY3d 912 [2012]). Here, the statements of defendant given in response to Nellis' questioning while he was handcuffed and in the back of the patrol car are clear admissions.[FN1] We cannot say beyond a reasonable doubt that these statements did not contribute to defendant's conviction and, as such, the error was not harmless. Since the jury should not have received all of the evidence it did, the judgment must be reversed (see People v Slocum, 133 AD3d 972, 974 [2015], appeal dismissed 29 NY3d 954 [2017]).
In light of the foregoing, the remaining issues have been rendered academic.
Lynch, J.P., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is reversed, on the law, defendant's motion to suppress statements made while in the police vehicle granted, and matter remitted to the County Court of Fulton County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: These were the only admissions that the jury was guaranteed to hear since the written statements given by defendant were suppressed, except for impeachment purposes.