People v Hartfield
2026 NY Slip Op 03698
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Earnest Hartfield, Appellant.

Decided and Entered:June 11, 2026
CR-22-1893 CR-22-1898
Calendar Date: April 22, 2026
Before: Aarons, J.P., Reynolds Fitzgerald, Powers, Corcoran And Ryba, JJ.

Sandra M. Colatosti, Albany, for appellant, and appellant pro se.
Mary Pat Donnelly, District Attorney, Troy (Michael Allain of counsel), for respondent.

[*1]
Powers, J.
Appeals (1) from a judgment of the County Court of Rensselaer County (Debra Young, J.), rendered September 12, 2022, upon a verdict convicting defendant of the crimes of assault in the first degree and assault in the second degree (two counts), and (2) from a judgment of said court, rendered September 12, 2022, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.
Following an incident between defendant and his wife (hereinafter the victim) in February 2020, defendant was charged by indictment with one count of assault in the first degree (see Penal Law § 120.10 [1]) and two counts of assault in the second degree (see Penal Law § 120.05 [1], [2]) (hereinafter the first indictment). Defendant was on parole supervision at the time of this incident and, the following day, his parole officer conducted a search of his apartment based upon known violations of his parole, specifically that he had, among other things, tested positive for alcohol and cocaine. A quantity of cocaine was located in defendant's apartment as a result of this search. He was subsequently charged by indictment with a single count of criminal possession of a controlled substance in the third degree (see Penal Law § 220.16 [12]) (hereinafter the second indictment). Defendant proceeded to trial on the first indictment and was found guilty as charged and, after unsuccessfully moving to suppress the results of the search of his apartment, he pleaded guilty to the single count contained in the second indictment. Defendant was thereafter sentenced, as a second felony offender, to a prison term of 15 years, to be followed by five years of postrelease supervision, on the conviction of assault in the first degree as contained in the first indictment. He was also sentenced to lesser concurrent prison terms for his convictions of assault in the second degree, as charged by count 2 of the first indictment,FN1 and criminal possession of a controlled substance in the third degree, as charged by the second indictment. Defendant appeals.FN2
Defendant contends that his convictions of assault in the first degree under count 1 of the first indictment (see Penal Law § 120.10 [1]) and assault in the second degree under count 3 of that indictment (see Penal Law § 120.05 [2]) are legally insufficient and the verdicts with respect thereto are against the weight of the evidence. Relevant to these convictions, "[a] person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person . . . by means of . . . a dangerous instrument" (Penal Law § 120.10 [1] [emphasis added]). Whereas "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person . . . by means of . . . a dangerous instrument" (Penal Law § 120.05 [2] [emphasis added]).FN3[*2]Defendant does not claim that he did not intend to cause the victim physical injury, that the physical injuries sustained by the victim were not serious or that a frying pan does not constitute a dangerous instrument. Rather, he claims that the evidence does not support that the injury was caused by a dangerous instrument due to the lack of credible testimony regarding the use of the frying pan during the incident and, relatedly, that there was expert testimony that the victim's injury could have been caused by hitting her head on the floor.
In conducting a legal sufficiency analysis, "we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Reinfurt, 241 AD3d 1015, 1017 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 1067 [2026]). In contrast, in a weight of the evidence challenge, we "must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then [we] must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Moore, 223 AD3d 1085, 1086-1087 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 1003 [2024]; see People v Marin, 239 AD3d 1028, 1029 [3d Dept 2025]).
The facts disputed by defendant primarily relate to the testimony of a witness, who attested that she was present during the incident. According to her testimony, she and the victim were at the victim's residence engaging in illicit drug use when the victim received a phone call from defendant. The victim took the call on speakerphone and, after arguing with the victim, defendant instructed the witness to bring the victim to his home. The witness, her son and the victim went to defendant's home. The witness and her son sat on the couch in the living room as defendant — who, according to the witness, appeared angry — and the victim engaged in conversation in the kitchen. The kitchen was partially visible from where the witness sat. Defendant yelled at the victim repeatedly, stating "where's my money, b***h," and the witness then heard defendant slap the victim. The witness explained that the money defendant was referencing were proceeds from drug sales that had been previously confiscated by law enforcement during a raid. The altercation intensified, with defendant bringing the witness and her son into the kitchen and yelling at them as well for the missing funds. Defendant then hit the victim in the face with his hands, placed a phone call during which he threatened the victim's life and began striking her again with his hands before utilizing a frying pan to strike her on [*3]the head. This caused the victim to fall to the floor and rendered her unconscious, at which time, defendant kicked her and hit her with a broom as she laid on the floor unmoving. The witness described that defendant then engaged in a series of attempts to revive the victim, which included, in part, hitting her in the face and taking her outside to pour water on her in the cold February air. This occurred as the witness pleaded with defendant that the victim needed medical attention. Defendant initially resisted and, when he eventually acquiesced, the victim stirred slightly causing defendant to ultimately opt not to seek medical attention for the victim. The witness had stayed out of fear, but when she and her son were able to leave the apartment without defendant's knowledge, they did so and reported the incident to law enforcement. The witness was candid during her testimony about her drug use and criminal history. At this time, it was also highlighted that she was testifying in exchange for immunity for her involvement in the underlying events.FN4 In addition to the testimony by the witness, defendant's neighbor stated that he heard an altercation in defendant's apartment on the night in question. Multiple members of law enforcement testified as to the ensuing investigation — during which frying pans were observed in defendant's apartment, though not photographed — as well as their perception of the victim's injuries. Finally, the victim's neurosurgeon described her injuries, the treatment required and that, without medical intervention, the injuries she sustained would have likely been fatal. This physician testified that he was never informed that she had been struck by a frying pan and that a single blunt trauma could have caused her injuries, such as hitting her head on the floor.
Defendant's argument before this Court is limited to whether the proof established that he had utilized a frying pan — rather than only his hands — in the underlying assault on the victim. Initially, viewing the evidence in the light most favorable to the People, there is legally sufficient evidence which supports the jury's determination that defendant had hit the victim in the head with a frying pan (see People v Serrano, 200 AD3d 1340, 1345 [3d Dept 2021], affd 38 NY3d 1180 [2022]; People v Watson, 174 AD3d 1138, 1140 [3d Dept 2019], lv denied 34 NY3d 955 [2019]). The witness testified that she observed defendant strike the victim numerous times with his hands before picking up a frying pan and striking her with it, which caused her to collapse to the floor. Despite no pan having been introduced at trial, law enforcement officers testified as to their observations of frying pans in defendant's apartment. As to weight, given the lack of direct evidence and the necessary credibility determinations, a different finding by the jury would not have been unreasonable (see People v Harris, 186 AD3d 907, 910 [3d Dept 2020], lv denied 36 NY3d 1120 [2021]). The jury was presented [*4]with expert testimony that the victim's injuries could have been caused by hitting her head on the floor. Nevertheless, it credited the description of events provided by the witness in the face of her admitted drug use, criminal history and the admission that she had not initially reported the use of the frying pan when speaking to officers on the night of the incident (see generally People v Gonzalez, 64 AD3d 1038, 1041-1042 [3d Dept 2009], lv denied 13 NY3d 796 [2009]). Thus, viewing the evidence in a neutral light and deferring to the jury's credibility determinations in this respect, defendant's use of the frying pan in the assault is supported by the weight of the evidence (see People v Wilkins, 216 AD3d 1359, 1363 [3d Dept 2023], lv denied 40 NY3d 1000 [2023]; People v Serrano, 200 AD3d at 1345-1346). Defendant's convictions of assault in the first degree (count 1) and assault in the second degree (count 3) are not legally insufficient and the verdicts with respect to these counts are not against the weight of the evidence.
Next, defendant's duplicity argument is without merit inasmuch as his actions "constituted an uninterrupted course of conduct directed at a single person" (People v Abussalam, 196 AD3d 1000, 1002 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]; see People v Flanders, 25 NY3d 997, 1000 [2015]). However, as the People concede, defendant correctly asserts that his conviction of assault in the first degree required dismissal of the counts charging assault in the second degree. "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense' " (CPL 1.20 [37]). Assault in the second degree pursuant to Penal Law § 120.05 (1) and (2) are lesser included offenses of assault in the first degree pursuant to Penal Law § 120.10 (1) (compare People v Hamm, 96 AD3d 1482, 1483 [4th Dept 2012], affd 21 NY3d 708 [2013], and People v Tucker, 91 AD3d 1030, 1031 [3d Dept 2012], lv denied 19 NY3d 1002 [2012] [addressing Penal Law § 120.05 (1)], with People v Spencer, 183 AD3d 1258, 1260-1261 [4th Dept 2020], lv denied 35 NY3d 1070 [2020], and People v Johnson, 81 AD3d 1428, 1429 [4th Dept 2011], lv denied 16 NY3d 896 [2011] [addressing Penal Law § 120.05 (2)]). At sentencing, County Court imposed a lesser concurrent term for defendant's conviction under count 2 and found that his conviction under count 3 was a lesser included offense which merged by operation of law with his conviction under count 1. However, a jury verdict finding defendant guilty of the greater count "is deemed a dismissal of every lesser count submitted" (CPL 300.40 [3] [b]; see People v Flanigan, 242 AD3d 1374, 1377 [3d Dept 2025]). Therefore, we take corrective action and dismiss both lesser counts.
Supreme Court (Ceresia, J.) properly denied defendant's motion to suppress. "[A] parolee does not surrender his or her constitutional [*5]rights against unreasonable searches and seizures, [however] what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is. Accordingly, a search of a parolee undertaken by a parole officer is constitutional if the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty and was substantially related to the performance of duty in the particular circumstances" (People v Spirito, 216 AD3d 1208, 1208-1209 [3d Dept 2023] [internal quotation marks and citations omitted], affd 42 NY3d 934 [2024]; see People v Lively, 42 NY3d 178, 182 [2024]; People v Bellamy, 118 AD3d 1113, 1115 [3d Dept 2014], lv denied 25 NY3d 1159 [2015]; cf. People v Thomas, 42 NY3d 236, 241 [2024]). Defendant's parole officer testified that, as a condition of his parole, defendant was required to, among other things, abstain from drug and alcohol use as well as submit to drug screens and searches of his home. She testified that defendant was not in compliance as he had tested positive for cocaine and alcohol and his GPS monitoring had detected that he travelled to a nearby county without approval. The parole officer affirmed that she conducted the search because, in view of these known violations, she suspected that defendant was in violation of additional conditions of his parole. While she was aware of the incident between defendant and the victim, this did not change the purpose of the search. The presence of law enforcement was requested in the event that assistance was needed and, following an altercation between defendant and another parole officer, certain law enforcement officers placed defendant into a police vehicle while others remained inside the home. Parole officers then continued their search and located a quantity of crack cocaine. The foregoing — namely defendant's positive drug screens and unapproved travels — establish that the search of defendant's home was rationally and reasonably related to the performance of the parole officer's duties (see People v Spirito, 42 NY3d 934, 935 [2024]; People v Walker, 80 AD3d 793, 794 [3d Dept 2011]; People v Johnson, 49 AD3d 1244, 1245 [4th Dept 2008], lv denied 10 NY3d 865 [2008]). The presence of law enforcement, who did not direct the search be undertaken, attempt to influence it in any way or take any part therein, did not invalidate the search (see People v Farmer, 136 AD3d 1410, 1411 [4th Dept 2016], lv denied 28 NY3d 1027 [2016]; People v Vann, 92 AD3d 702, 702-703 [2d Dept 2012], lv denied 19 NY3d 868 [2012]; see also People v Lively, 42 NY3d at 183; compare People v Santiago, 176 AD3d 744, 746-747 [2d Dept 2019], lv denied 34 NY3d 1081 [2019]). Consequently, there was no error in denying defendant's motion to suppress the evidence collected from this search.
We likewise reject defendant's claim that he was denied meaningful representation by counsel's failure to request that the jury be specifically [*6]instructed that the counts charging assault in the second degree were lesser included offenses of assault in the first degree. Because the "submission of a lesser included offense is often a strategic decision that could reasonably be made either way," "the failure to object to or request that the jury be charged as to a lesser included offense is not the type of clear-cut and completely dispositive error that rises to the level of ineffective assistance of counsel" (People v Terry, 240 AD3d 1128, 1132-1133 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 995 [2025]; see People v McGee, 20 NY3d 513, 520 [2013]; People v Mousaw, 233 AD3d 1383, 1384 [3d Dept 2024], lv denied 43 NY3d 1010 [2025]). Trial counsel's strategy hinged upon casting doubt on defendant's use of the frying pan in the underlying assault. If the jury credited this, the element requiring the use of a dangerous instrument would not be satisfied and defendant would be guilty of either assault in the second degree (count 2) or assault in the third degree, depending on the extent the jury believed the victim to have been injured. As such, it cannot be said that there was no tactical reason for not requesting a lesser included offense charge as this was likely done to allow for a compromise verdict rather than the jury's consideration of assault in the first degree and then, only if the jury did not find defendant guilty of that offense, assault in the second degree (see People v Baker, 14 NY3d 266, 272-273 [2010]; People v Dozier, 94 AD3d 1226, 1229 [3d Dept 2012], lv denied 19 NY3d 996 [2012]; see also CJI2D[NY] Lesser Included Offenses, https://www.nycourts.gov/judges/cji/1-General/CJI2d.Lesser-Included-Offense.docx [last accessed May 7, 2026]). The record reveals that trial counsel appropriately advocated for his client by presenting cogent opening and closing statements, making numerous relevant objections, vigorously cross-examining witnesses and that he otherwise pursued a rational, albeit ultimately unsuccessful, trial strategy (see People v Prusinski, 242 AD3d 1427, 1432 [3d Dept 2025], lv denied 45 NY3d 938 [2026]; People v Contompasis, 236 AD3d 138, 153 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). After trial, counsel lobbied for the imposition of the minimum prison term as to his convictions under the first indictment and negotiated a plea agreement on the second indictment that defendant accepted. As such, viewed in totality and at that time, defendant received meaningful representation (see generally People v Guy, 233 AD3d 1352, 1357-1358 [3d Dept 2024]).
Defendant's pro se contentions, which allege prosecutorial misconduct and deprivation of his right to confrontation, have been reviewed and found to be either belied by the record or lacking in merit.
Aarons, J.P., Reynolds Fitzgerald, Corcoran and Ryba, JJ., concur.
ORDERED that the judgment on indictment 20-1043 is modified, on the law, by reversing defendant's convictions on [*7]counts 2 and 3 of the indictment; said counts dismissed and sentences thereon vacated; and, as so modified, affirmed.
ORDERED that the judgment on indictment 20-1081 is affirmed.

Footnotes

Footnote 1
County Court (Young, J.) found defendant's sentence under count 3 of the first indictment to merge with his conviction of assault in the first degree.

Footnote 2
Defendant spelled his name "Ernest Hartfield" in his pro se notice of appeal and most filings in this Court have spelled his name in that way. However, as the indictment, trial court filings and Department of Corrections and Community Supervision have the spelling of his name as "Earnest Hartfield," we shall utilize that spelling (see Dept of Corrections and Community Supervision Incarcerated Lookup, https://nysdoccslookup.doccs.ny.gov [last accessed May 8, 2026]).

Footnote 3
Though not contested, a dangerous instrument is defined as "any instrument, article or substance, . . . which, under the circumstances in which it is used, . . . is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]).

Footnote 4
Despite the testimony by the witness that she did not receive immunity, the People explained that she had received immunity as to this crime but not others for which she was involved and, therefore, the People believed her to be confused. As a result, an instruction was given to the jury to clarify this information.